Hillsborough
No. 7471

STATE OF NEW HAMPSHIRE

v.

WALTER J. HARLAN, JR., & a.

September 30, 1976

*David H. Souter,* attorney general, *Richard V. Wiebusch,* and *W. John Funk,* assistant attorneys general *(Mr. Funk* orally), for the State.

*Emile R. Bussiere,* by brief and orally, for the defendant Walter J. Harlan, Jr.; *Stanley M. Brown* and *Vincent F. Dooley (Mr. Dooley* orally) for the defendants Richard Finucan and George Lussier; *Wadleigh, Starr, Peters, Dunn & Kohls* and *Robert L. Chiesa (Mr. Chiesa* orally) for the defendant James McDermott.

DUNCAN, J. The defendants who are wholesale and used car dealers in Manchester, New Hampshire, were charged in multiple indictments with theft by deception. RSA 637:4. All defendants moved on various grounds to dismiss the indictments. With respect to defendants Harlan, McDermott, and Lussier, the motions were reserved and transferred without ruling in advance of trial *(Loughlin,* J.). Defendant Finucan's motion was "granted conditioned upon consolidation and transfer without ruling" with the other cases. *(Dunfey,* J.)

Involved are twelve indictments naming defendant Harlan, ten naming defendant McDermott, three naming defendant Lussier and a single indictment naming defendant Finucan. The gravamen of each is that the defendant, on specified occasions, purchased a used automobile, reset the odometer so that it exhibited a lower number of miles than the car had actually traveled, and later sold the car to a third party. The indictments follow a pattern which is critical to a number of the defendants' contentions.

Taking the defendants in order, Harlan is alleged to have engaged in six transactions each of which is used to support two indictments. The first of these, in the language of RSA 637:4 II (a), charges the defendant with theft "by purposely reinforcing a

false impression which he [the defendant] did not believe to be true," *viz.*, that the odometer reading was correct at the time of sale. In support of this contention, the indictment recites that the defendant made a "false written declaration" as to the correct odometer reading at the time of sale. A second indictment founded upon the same sale is cast in the language of RSA 637:4 II (c) and charges the defendant with theft by deception "by purposely preventing [the purchaser] from acquiring information which was pertinent" to the sale. In support of this contention, the indictment recites that the defendant failed to forward a properly endorsed certificate of title to the purchaser as required by RSA 269-A:15 (Supp. 1975). The pattern of these two indictments is repeated for each transaction, with the result that the six transactions in which Harlan is alleged to have engaged are used to support twelve indictments.

As to the defendant McDermott, the indictments chart a similar course with five transactions used to support ten indictments. In the case of the defendant Lussier, three indictments were found and returned on the basis of three alleged transactions, each indictment charging the defendant with theft by purposely preventing the purchaser from acquiring information pertinent to the sale of the car (RSA 637:4 II (c)). However, unlike the above indictments, these were supported by a simple statement that the defendant failed to disclose to the purchaser that the odometer reading was incorrect at the time of sale.

The fourth defendant, Finucan, was named in a single indictment charging him with theft by purposely reinforcing a false impression which he did not believe to be true (RSA 637:4 II (a)) and alleged that the defendant made a "false written declaration" to the purchaser that the odometer reading at the time of sale was correct.

The defendants challenge these indictments on the grounds that they are duplicitous and render the defendants unable to prepare a proper defense; that the indictments purport to charge a felony under RSA 637:4 when, at most, the State has alleged a misdemeanor under RSA 260:91 and :92 (Supp. 1975); that any view of the facts alleged in the indictments supports the conclusion that New Hampshire lacks territorial jurisdiction to try these defendants; and that, in light of the documentary evidence introduced at the hearings below, the particular indictments alleging that the defendants signed false written statements will not and cannot be supported by any evidence at trial.

Initially, the defendants argue that, taken in sum, the indictments are so confusing and duplicitous as to render the defendants unable to prepare an adequate defense. They characterize the indictments as the "product of a shotgun technique ... hoping to find its target through dispersion rather than precision." Part I, article 15 of the New Hampshire constitution provides that "No subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him . . . ." RSA 601:4 repeats the requirement. Our cases evince "a rule of long standing in this State that a complaint must inform the defendant of the offense for which he is charged with sufficient specificity so that he knows what he must be prepared to meet and so that he is protected from being put in jeopardy once again for the same offense." *State v. Inselburg,* 114 N.H. 824, 827, 330 A.2d 457, 459 (1974); *see State v. Bergeron,* 115 N.H. 70, 71-72, 333 A.2d 721, 723 (1975); 2 F. Wharton, Criminal Procedure §§ 287-89 (Torcia ed. 1975).

The crux of the defendants' argument is that each of the indictments may be interpreted to charge more than one offense and thus each defendant must perforce "search through the pattern and choose, at his peril, a basis upon which to defend." A fair reading of the text of each indictment reveals that this is not the case. *See* Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure,* 69 Yale L.J. 1149, 1173-74 (1960). First, while there are numerous indictments covering similar transactions, the language of each follows the language of the statute under which it was returned. While this is not always sufficient of itself *(State v. Inselburg, supra* at 827, 330 A.2d at 459), in this case each indictment makes clear reference to the statute, section, and subsection which forms the basis for the indictment. *See State v. Panichas,* 107 N.H. 359, 362, 222 A.2d 211, 213 (1966).

Taking an example, the first indictment against the defendant Harlan recites in part: "that Walter J. Harlan ... did purposely and with a purpose to deprive it thereof exercise control in said Manchester over one thousand three hundred twenty five dollars ($1,325.00), the property of Antone C. Reis ... by purposely reinforcing a false impression which he did not believe to be true, in that he did on August 3, 1974, acquire a 1970 Chevrolet automobile ... which automobile had at that time an odometer reading of approximately 85,040 miles, did thereafter, on August 9, 1974, sell the said Chevrolet automobile with an odometer reading of approximately 35,000 miles ... to Antone C. Reis,

d/b/a Reis Auto Repair, for one thousand three hundred twenty five dollars ($1,325.00), and did thereafter make a false written declaration that the correct odometer reading for the said Chevrolet automobile was approximately 35,000 miles and that the previous owner was Robert Frost, Middlebury, Vermont, which declaration was received by Antone C. Reis . . . ." It is plain that the indictment charges every element of the statutory offense of theft by deception (RSA 637:4 I) as defined in RSA 637:4 II (c). Each indictment charging a crime under RSA 637:4 II (c) is similarly drafted. Furthermore, each indictment charging a crime under RSA 637:4 II (a) tracks the language of the statute and clearly alleges every element of the offense. *Russell v. United States,* 369 U.S. 749, 763-64 (1962); *see* Fed. R. Crim. P. 7(c) (1); Scott, *Fairness in the Accusation of Crime,* 41 Minn. L. Rev. 509 (1957).

The defendants point to the fact that the conduct alleged in the indictments may well constitute violations of RSA 260:91, :92 (Supp. 1975) (tampering with an odometer) and RSA 269-A:15 (Supp. 1975) (willful failure to forward a certificate of title). While this may be true, it is plain that the present indictments allege theft by deception, nothing more and nothing less. Accordingly, verdicts on the indictments will be res judicata as to any future attempt by this State to try the defendants for theft or any lesser included offense. ALI Model Penal Code § 1.08 (1962); *see State v. Harlan,* 103 N.H. 31, 164 A.2d 562 (1960); *State v. Collins,* 115 N.H. 499, 345 A.2d 162 (1975). The critical allegation in each indictment is that the defendant converted the property of another to his own use by means of a deception. The fact that this may have been accomplished in part by acts which of themselves constitute separate offenses does not change the basic nature of the charge. In short, the indictments are not "bad for uncertainty." *State v. Messenger,* 58 N.H. 348 (1878).

With respect to the defendants Harlan and McDermott each transaction is made the subject of two indictments. Both indictments charge theft by deception under RSA 637:4 I. Under that statute there is only one crime in each case, albeit it may be accomplished by any of the means enumerated in RSA 637:4 II. RSA 637:1 provides that "[a]n accusation of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the indictment or information." *See* Report of Commission to Recommend Codification of Criminal Laws, Comments at 60 (1969). The State is free to prove its case

under any of the various theories enumerated in RSA 637:4 II, but as to each sale it is entitled to only one conviction of theft by deception. *See* Y. Kamisar, W. LaFave and J. Israel, Modern Criminal Procedure 1199 (4th ed. 1974). This conclusion requires that six of the indictments naming Harlan and five naming McDermott be dismissed. Since the State is free to proceed under any of the theories advanced in present indictments, it is in no way prejudiced by dismissal of the multiplicitous indictments in advance of trial. Which indictment of each pair should be dismissed is for the trial court to determine. *State v. Bergeron*, 115 N.H. 70, 333 A.2d 721 (1975); *State v. Goodwin*, 116 N.H. 37, 351 A.2d 59 (1976).

The defendants next contend that the State is precluded from charging theft where, at most, the facts included in the indictment indicate a violation of RSA 260:91 and :92 (Supp. 1975). Those sections make it a crime to tamper with an odometer with the intention of misrepresenting to a prospective purchaser the actual number of miles the vehicle has traveled. A first offense constitutes a misdemeanor while a subsequent offense constitutes a class B felony. Theft by deception may, depending on the value of the goods appropriated, constitute a class A felony. RSA 637:11

An examination of the statutes reveals that the elements of each crime differ materially despite the fact that the operative facts on which the State relies in the present indictments may also constitute an offense under RSA 260:91, :92 (Supp. 1975). The critical difference lies in the fact that RSA 637:4 requires a finding that the defendant unlawfully converted the property of another to his own use, an element wholly lacking under RSA 260:91 (Supp. 1975). The statutes are neither inconsistent nor duplicitous in that regard. Tampering with an odometer with the intent to deceive a prospective purchaser may well be preparatory to the commission of the more serious offense of theft by deception. It does not follow that the State is precluded from charging the greater simply because it might have charged the lesser. This is not a case where the prosecutor must necessarily choose between two criminal statutes each of which ultimately requires the same elements of proof to sustain a conviction. *Hutcherson v. United States*, 345 F.2d 964, 972-77 (D.C. Cir. 1965) (Bazelon, C.J., concurring in part and dissenting in part); *Olsen v. Delmore*, 48 Wash. 2d 545, 295 P.2d 324 (1956); *see* Comment, *Prosecutorial Discretion in the Duplicative Statutes Setting*, 42 U. Colo. L. Rev. 455 (1971). Put another way, the offenses are not the same in law and in fact and

thus these indictments do not raise the specter of abuse of prosecutorial discretion. The present indictments charge the defendants with theft. While "[a] criminal statute is not to be broadened beyond the fair import of its language . . . ." *(State v. Cutting,* 114 N.H. 200, 202, 317 A.2d 553, 554 (1974)), there is nothing fundamentally erroneous in the theory which the State advances. *People v. Ross,* 25 Cal. App. 3d 190, 100 Cal. Rptr. 703 (Ct. App. 1972); *see* ALI Model Penal Code § 206.1 (6) (a) C, example 2, at 86 (Tent. Draft No. 1, 1953). Since the one statute does not mirror the other, the State is free to proceed under either or both, cognizant of its greater burden under RSA 637:4. *People v. Eboli,* 34 N.Y.2d 281, 287, 313 N.E.2d 746, 749 (1974).

The defendants have argued that the particular indictments which charge them with reinforcing a false impression by making a false written declaration must fail because the documentary evidence which is the basis of the indictments is insufficient to support the charge. At the hearing below, the State introduced a number of "odometer mileage statements" (required by federal law upon transfer of ownership, 15 U.S.C.A. § 1988 (1974); 49 C.F.R. § 580 (1975)). In each case, the entry under "mileage indicated on the vehicle" corresponded to the mileage indicated on the odometer at the time of sale. However, there was no statement on the face of the form indicating that this was the actual mileage the vehicle had traveled. More precisely, neither the box denominated "actual mileage" nor the box denominated "true mileage unknown" was checked off. Thus, the defendants argue that the statements were not false. The argument is overly technical. In spite of the fact that the forms are incomplete, there may well be an implied representation that the actual mileage corresponds to the mileage indicated on the odometer and the form. The matter should properly be resolved at trial after consideration of all the circumstances surrounding each sale. The State is free to introduce additional evidence to buttress the allegations of the indictments with the *caveat* that the trial judge may take steps to avoid prejudice to the defendants by undue surprise. *See* RSA 637:1 and Report of Commission to Recommend Codification of Criminal Laws, Comments at 60 (1969). In any event, it would be improper to dismiss the indictments without first permitting the State to put these documents and any related and supporting evidence before the trier of fact. Note, *Indictment Suffiency,* 70 Colum. L. Rev. 876 (1970); Y. Kamisar, W. LaFave, and J. Israel, Modern Criminal Procedure 1195-207 (4th ed. 1974).

Finally, the defendants contend that the New Hampshire courts lack jurisdiction because the offenses were committed, if anywhere, in Massachusetts. The facts which bear on this question indicate that the defendants are used car dealers doing business in New Hampshire; that on a number of occasions they purchased vehicles in New Hampshire for resale in Massachusetts; that some time prior to resale the odometers were turned back, although there is no indication where this was done; that the vehicles were auctioned in Acton, Massachusetts; and that checks representing the proceeds of the sales were deposited to the sellers' accounts in New Hampshire.

RSA 625:4 I (a) provides that a person may be convicted under the laws of this State if "conduct which is an element of the offense . . . occurs within this state." "[T]he increasing importance of offenses based upon conduct interstate in nature [has resulted in] statutes extending the jurisdiction of the state to offenses committed at least partly outside the state." ALI Model Penal Code § 1.03, Comment at 3 (Tent. Draft No. 5, 1956). Our statute, which substantially conforms to the Model Penal Code regarding jurisdiction, brings within its ambit any crime which is committed wholly or partly within this State. Perkins, *The Territorial Principle in Criminal Law,* 22 Hastings L.J. 1155 (1971). The question in this case is whether any part of the statutory offense of theft by deception has been committed in New Hampshire.

That crime involves: (1) obtaining or exercising control over the property of another with the intent to deprive him thereof, (2) by means of deception. It does not tax the language of the statute to conclude that the defendants did not accomplish the first of these until the checks had been deposited to their accounts in New Hampshire. *See* RSA 383-A:4-201, :4-211 (3), :4-213 (3); Annot., 141 A.L.R. 210, 234 (1942); *State v. Jarrett,* 177 Neb. 459, 129 N.W.2d 259 (1964). The signatories to the checks could have stopped payment at any time before the checks were paid, had they discovered the fraud. RSA 382-A:4-303. The conclusion that New Hampshire has jurisdiction in these cases is consistent with that reached by the drafters of the Model Penal Code "[T]he obtaining of money in State A on the basis of false representations made in State B would be an offense partly committed in State A since the result occurs there." ALI Model Penal Code § 1.03, Comment at 8 (Tent. Draft No. 5, 1956); RSA 625:4 I (a). New Hampshire has jurisdiction to try these offenses. *Bates v. State,* 124

Wis. 612, 103 N.W. 251 (1905); *State v. Smith,* 162 Iowa 336, 144 N.W. 32 (1913); *cf.* Annot., 156 A.L.R. 862 (1945).

*Remanded.*

GRIMES, J., did not sit; the others concurred.