Carroll
No. 95-884

## THE STATE OF NEW HAMPSHIRE

v.

## WILLIAM J. STEWART

February 24, 1998

*Philip T. McLaughlin*, attorney general (*John A. Stephen*, assistant attorney general, on the brief, and *Janice K. Rundles*, senior assistant attorney general, orally), for the State.

*John P. Newman*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant, William J. Stewart, was convicted in Superior Court (*O'Neill*, J.) of criminal contempt for violating a protective order issued by the Northern Carroll County District Court. On appeal, he claims that the New Hampshire courts lacked territorial jurisdiction because the acts comprising the contempt charge occurred in Maine. We affirm.

The following facts were adduced at trial. In October 1993, the district court issued a protective order prohibiting the defendant

from contacting, harassing, or intimidating his sister. *See* RSA 173-B:4, I(a) (1994). The following month, both the defendant and his sister attended a hearing on an unrelated matter at a district court in Maine. At the courthouse, the defendant made threatening and profane remarks directed toward his sister. As a result, a petition for criminal contempt was filed, alleging that the defendant "knowingly harassed[,] intimidated and threatened" his sister in violation of the protective order. *See* RSA 173-B:8, II(a) (1994). The defendant was found guilty and this appeal followed.

The defendant argues that pursuant to RSA 625:4 (1996), New Hampshire lacks territorial jurisdiction because the acts giving rise to the contempt charge occurred in Maine. RSA 625:4 states in pertinent part:

> I. Except as otherwise provided in this section, a person may be convicted under the laws of this state for any offense committed by his own conduct or by the conduct of another for which he is legally accountable if:
>
> (a) Either conduct which is an element of the offense or the *result* which is such an element occurs within this state
> . . . .

(Emphasis added.) The State argues that RSA 625:4 is inapplicable because contempt is a common law crime. *See State v. Martina*, 135 N.H. 111, 116, 600 A.2d 132, 135 (1991) ("Although characterized as a crime, criminal contempt should properly be viewed as a non-statutory offense."). We need not base our decision on that ground, however, because even assuming, without deciding, that RSA 625:4 applies to indirect criminal contempt actions such as this, the defendant does not prevail.

RSA 625:4, I(a) "brings within its ambit any crime which is committed wholly or partly within this State." *State v. Harlan*, 116 N.H. 598, 605, 364 A.2d 1254, 1259 (1976), *rev'd on other grounds*, *State v. Kelly*, 125 N.H. 484, 487, 484 A.2d 1066, 1068 (1984). Our courts can properly exercise territorial jurisdiction in cases where the illegal act occurred outside the State, if the *result* of that act is felt in New Hampshire and constitutes an element of an offense under New Hampshire law. *See* RSA 625:4, I(a). The elements of criminal contempt are threefold: (1) that a valid court order covering the defendant exists; (2) that the defendant had notice of that order; and (3) that the defendant intentionally committed acts in violation of that order. *State v. Linsky*, 117 N.H. 866, 872, 379 A.2d 813, 817 (1977).

█ The defendant's argument that New Hampshire lacked jurisdiction because the acts in violation of the order occurred in Maine is without merit. The defendant fails to recognize that two distinct wrongful acts occurred when he threatened his sister in the Maine courthouse. First, there was the threatening act against his sister. Second, there was the intentional violation of a New Hampshire court order, which is an offense against the State of New Hampshire itself. *See Pennington v. State*, 521 A.2d 1216, 1221-22 (Md. 1987); *Farmers' State Bank of Texhoma v. State*, 164 P. 132, 132 (Okla. Crim. App. 1917). Criminal contempt "occurs as a result of a defendant's interference with the court's process or dignity," *Duval v. Duval*, 114 N.H. 422, 425, 322 A.2d 1, 3 (1974), and has been characterized as a "public wrong." *Id*. The Northern Carroll County District Court had jurisdiction over the defendant when it issued the protective order, and as such, the act of contempt is "directly against the dignity and authority of that court, no matter to what county or state the offender may go to violate the order of the court." *Baker v. Baker*, 601 P.2d 433, 435 (N.M. 1979) (quotation omitted). Accordingly, New Hampshire courts have jurisdiction to punish the contemnor regardless of where the contemptuous act took place. *See* 17 C.J.S. *Contempt* § 64, at 167 (1963) ("The fact that the acts constituting contempt occurred outside the territorial jurisdiction of a court does not deprive it of jurisdiction . . . ."); *cf. State v. Roberts*, 136 N.H. 731, 737, 622 A.2d 1225, 1229-30 (1993) (applying RSA 625:4, I(b)).

*Affirmed.*

All concurred.